GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr., Bar No. 132099
tboutrous@gibsondunn.com
Nicola T. Hanna, Bar No. 130694
nhanna@gibsondunn.com
Poonam G. Kumar, Bar No. 270802
pkumar@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

GIBSON, DUNN & CRUTCHER LLP
Blaine H. Evanson, Bar No. 254338
bevanson@gibsondunn.com
3161 Michelson Drive
Suite 1200
Irvine, California 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

GIBSON, DUNN & CRUTCHER LLP
Miguel A. Estrada (*pro hac vice* forthcoming)
mestrada@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Plaintiffs*
*TikTok Inc. and TikTok USDS Joint Venture LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

TIKTOK INC.; TIKTOK USDS JOINT VENTURE LLC,

Plaintiffs,

v.

ROB BONTA, in his official capacity as Attorney General of California,

Defendant.

Case No. 2:26-cv-12965-JAK (MBKx)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: December 14, 2026
Time: 8:30 a.m.
Judge: Hon. John Kronstadt

**PLEASE TAKE NOTICE** that on December 14, 2026, at 8:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable John Kronstadt, in the U.S. District Court for the Central District of California, 350 W. First Street, Los Angeles, California 90012, Plaintiffs TikTok Inc. and TikTok USDS Joint Venture LLC ("TikTok" or "Plaintiffs") will and hereby do move under Federal Rule of Civil Procedure 65(a) for an order granting a preliminary injunction against Defendant Rob Bonta, in his official capacity as Attorney General of California, preventing him, together with his officers, agents, employees, and all other persons in active concert or participation with them, from enforcing California Business and Professions Code §§ 22683, 22684(b)(1), and 22686 against TikTok with respect to personalized feeds.

Beginning on January 1, 2027, California's Assembly Bill 1709 prohibits TikTok from providing any personalized feed of user-generated content to Californians under sixteen; if it does not reconfigure its product, TikTok would be required to delete the accounts of those users and all personal information associated with them. Cal. Bus. & Prof. Code §§ 22683, 22684(b)(1). Knowing violations carry penalties of up to $50,000 per affected minor. *Id.* § 22686(b)(1).

This motion is made on the grounds that TikTok is likely to succeed on the merits of its claims that (1) the personalized-feed ban and deletion mandate violate the First Amendment rights of TikTok and its users; and (2) Section 230 of the Communications Decency Act independently preempts both the personalized-feed ban and the deletion mandate. Additionally, TikTok is likely to suffer irreparable harm absent injunctive relief. Preliminary injunctive relief is also warranted because the balance of hardships leans heavily in TikTok's favor, and the relief serves the public interest.

This Motion is made based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the evidence submitted

herewith, the pleadings and papers on file in this action, the arguments of counsel, and any other matter the Court may properly consider.

Dated: November 6, 2026

Respectfully submitted,

By: */s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.
**Gibson, Dunn & Crutcher LLP**

Theodore J. Boutrous Jr.
Nicola T. Hanna
Poonam G. Kumar
Blaine H. Evanson
Miguel A. Estrada

*Attorneys for Plaintiffs TikTok Inc. and TikTok USDS Joint Venture LLC*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

I. The TikTok Experience ..... 3

A. TikTok Curates, Moderates, and Disseminates Its Users' Videos. ..... 3

B. TikTok Protects Teens and Empowers Parents. ..... 4

II. California's Existing Restrictions on Teens' Social Media Use Include Parental Consent Exceptions. ..... 4

III. A.B. 1709 Now Bans Personalized Feeds and Autoplay for Users Under Sixteen. ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 6

I. TikTok Is Likely to Succeed on the Merits ..... 6

A. The Personalized-Feed Ban Violates the First Amendment ..... 7

1. TikTok's Personalized Feeds Are Protected by the First Amendment. ..... 7

2. The Act Prohibits TikTok's Speech, Triggering First Amendment Scrutiny. ..... 9

3. The Personalized-Feed Ban Fails First Amendment Scrutiny ..... 11

4. The Personalized-Feed Ban Also Violates the Rights of TikTok's Users. ..... 16

B. The Deletion Mandate Violates the First Amendment. ..... 16

C. Section 230 Preempts the Personalized-Feed Ban and the Deletion Mandate. ..... 19

II. TikTok Faces Imminent and Irreparable Harm Absent Injunctive Relief. .......... 20

III. The Balance of Equities and Public Interest Weigh in TikTok's Favor. .......... 21

IV. The Court Should Waive the Bond Requirement. .......... 21

CONCLUSION .......... 22

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) .......... 12

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 6

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010) .......... 9

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) .......... 2, 21

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......... 19, 20

*Boos v. Barry*,
485 U.S. 312 (1988) .......... 10

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) .......... 7, 111, 13, 14, 14, 17

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .......... 19, 20

*Cinevision Corp. v. City of Burbank*,
745 F.2d 560 (9th Cir. 1984) .......... 9

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) .......... 9, 11

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) .......... 3, 21

*Diamond Sands Apartments, LLC v. Clark Cnty.*,
164 F.4th 759 (9th Cir. 2026) .......... 6

*Doe 1 v. Meta Platforms, Inc.*,
174 F.4th 1159 (9th Cir. 2026) .......... 19, 20

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) .......... 19

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) .......... 16, 17

*Frost v. R.R. Comm'n of Cal.*,
271 U.S. 583 (1926) .......... 2, 17

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) .......... 20

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) ........ 8

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ........ 21

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ........ 21

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) ........ 21

*McCullen v. Coakley*,
573 U.S. 464 (2014) ........ 11, 13, 13

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) ........ 6

*Meta Platforms, Inc. v. Bonta*,
No. 5:25-cv-09792-EJD, 2026 WL 2260373 (N.D. Cal. Aug. 5, 2026) ........ 8

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974) ........ 7

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Rev.*,
460 U.S. 575 (1983) ........ 17

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........ 1, 7, 9, 18

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) ........ 18

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ........ 17

*NetChoice, LLC v. Bonta*,
113 F.4th 1101 (9th Cir. 2024) ........ 13

*NetChoice, LLC v. Bonta*,
152 F.4th 1002 (9th Cir. 2025) ........ 5

*Packingham v. North Carolina*,
582 U.S. 98 (2017) ........ 16

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025) ........ 17

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........ 9, 10, 18

*Reno v. ACLU*,
521 U.S. 844 (1997) ........ 1, 16

*Riley's Am. Heritage Farms v. Elsasser*,
32 F.4th 707 (9th Cir. 2022) .......... 2, 21

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984) .......... 18

*Sable Commc'ns of Cal., Inc. v. FCC*,
492 U.S. 115 (1989) .......... 11, 13

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 17

*Stanley v. Georgia*,
394 U.S. 557 (1969) .......... 16

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 7

*TikTok Inc. v. Bonta*,
No. 26-5121 (9th Cir. filed Aug. 11, 2026) .......... 1, 5

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) .......... 11

*United States v. O'Brien*,
391 U.S. 367 (1968) .......... 11

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000) .......... 11

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988) .......... 16

**Statutes**

47 U.S.C. § 230 .......... 2, 19, 20

Cal. Bus. & Prof. Code § 22682 .......... 1, 5, 6, 9, 10, 14, 15, 20

Cal. Bus. & Prof. Code § 22683 .......... 1, 5, 5, 9, 20, 22

Cal. Bus. & Prof. Code § 22684 .......... 1, 2, 5, 6, 16, 18, 20, 21, 22

Cal. Bus. & Prof. Code § 22686 .......... 1, 2, 6, 21, 22

Cal. Health & Safety Code § 27000.5 .......... 4, 5

Cal. Health & Safety Code § 27001 .......... 4, 5

**Constitutional Provisions**

Cal. Const. art. IV, § 8 .......... 6

## Rules

Fed. R. Civ. P. 65 .......... 21

## Other Authorities

Assemb. Comm. on Privacy & Consumer Prot., Bill Analysis, A.B. 1709 (Lowenthal), 2025-2026 Reg. Sess. (Cal. Apr. 16, 2026) .......... 11

*The New York Times Adds Listen Mode and More Personalization to News App*, N.Y. Times (June 7, 2024) .......... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs TikTok Inc. and TikTok USDS Joint Venture LLC (collectively, "TikTok") provide an entertainment platform whose mission is to inspire creativity and bring joy. Over 200 million Americans use TikTok each month, and the billions of posts that they make on the platform are "as diverse as human thought." *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (internal quotation marks omitted). To achieve its mission, TikTok must sift through and organize a vast sea of content—moderating content for appropriateness and curating content in personalized feeds that reflect TikTok's editorial choices and that account for each individual user's interests, preferences, and circumstances. Through such editorial judgment and personalization, TikTok not only creates a positive, collaborative, and safe digital environment for its users' expression but also exercises its own First Amendment rights. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024).

A.B. 1709, which goes into effect in 2027, is the second California law that unconstitutionally infringes on TikTok's expression and that of its users. Two years ago, the Legislature banned TikTok from offering its personalized feeds to California minors absent parental consent. 2024 Cal. Stat. ch. 321 (codified at Cal. Health & Safety Code §§ 27000-27007). With TikTok's challenge to that unconstitutional restriction pending, *see TikTok Inc. v. Bonta*, No. 26-5121 (9th Cir. filed Aug. 11, 2026), the State went even further. A.B. 1709 prohibits TikTok from sharing its expressive, personalized feeds product with Californians under sixteen and from using "autoplay" or any other feature that the Attorney General deems "addictive." Cal. Bus. & Prof. Code §§ 22682(a), 22683(a)(1). TikTok's only alternative to surrendering its right to engage in expressive curation is to delete the accounts and "personal information" of every California user under sixteen. *Id.* § 22684(b)(1). Knowing violations carry penalties of up to $50,000 "per affected minor." *Id.* § 22686(b)(1).

This Court should preliminarily enjoin A.B. 1709, which runs roughshod over the First Amendment rights of both TikTok and its users.

***First***, TikTok is likely to succeed on each of its claims. The personalized-feed ban is a content-based restriction on TikTok's editorial choices that fails any level of heightened scrutiny. The State has not shown that a feed tailored to a teen's interests is materially more harmful than the same videos sorted by date; it ignored less restrictive alternatives; and the ban paradoxically forbids TikTok from using a teen's viewing history to keep harmful content out of her feed. The ban also violates the rights of teens themselves. The deletion mandate offers TikTok only "a choice between the rock and the whirlpool," *Frost v. R.R. Comm'n of Cal.*, 271 U.S. 583, 593 (1926): surrender its own speech or stop its users from speaking. And Section 230 independently preempts both provisions, each of which imposes liability for quintessential publishing decisions. 47 U.S.C. § 230(c)(1), (e)(3).

TikTok shares the State's goal of protecting young people; that is why it built default screen-time settings, private-by-default accounts, and parental controls. But the First Amendment does not permit California to dictate how a disfavored medium may speak to an entire age group, overriding the very parents it claims to protect.

***Second***, TikTok and its users are likely to suffer irreparable harm absent preliminary relief. Unless TikTok rebuilds its platform and surrenders its First Amendment rights, TikTok must "delete the account" of every Californian under sixteen "and any personal information associated with the user." Cal. Bus. & Prof. Code § 22684(b)(1). Knowing violations carry penalties of up to $50,000 "per affected minor." *Id.* § 22686(b)(1). TikTok's exposure could run into the billions of dollars. Every day of enforcement would inflict irreparable harm on TikTok and its users.

***Third***, the balance of equities and the public interest, which "merge" here, favor an injunction. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). It "is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am.*

*Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022). And the fact that TikTok has "raised serious First Amendment questions compels a finding that … the balance of hardships tips sharply in [TikTok's] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted).

The Court should grant the motion.

## FACTUAL BACKGROUND

### I. The TikTok Experience.

#### A. TikTok Curates, Moderates, and Disseminates Its Users' Videos.

More than 200 million people in the United States use TikTok each month to make, share, and watch videos. Zhou Decl. ¶ 4. In 2026 to date, U.S. users uploaded more than 12 billion videos, which were viewed more than 22 trillion times. *Id.* ¶ 5.

The TikTok experience centers on discovering new content through TikTok's signature offering—the For You feed. Zhou Decl. ¶ 6. TikTok uses three interconnected editorial processes to decide what content it shares. *Id.* ¶ 7. *First*, all user-generated content goes through an automated moderation system that checks for compliance with TikTok's Community Guidelines. Stokka Decl. ¶ 20. The system can remove content that violates the Guidelines, deem content ineligible for recommendation, and flag it for human review. *Id.* ¶¶ 20-21. Beyond that threshold review, the moderation process also labels content that may be unsuitable for some users, such as teens, so that the recommendation system can keep it out of their feeds. Zhou Decl. ¶ 29.

*Second*, TikTok uses its recommendation system to personalize feeds. This system identifies content that TikTok believes a user is likely to find interesting or entertaining. *Id.* ¶¶ 11-14. TikTok engineers designed the system to consider a user's past activity, such as likes and past video views, as well as TikTok's judgments about the content itself. *Id.* ¶¶ 12, 14, 19, 31. And its automated processes run according to human judgments about what will appeal to each user. *Id.* ¶¶ 7, 26-27. TikTok

employees set the objectives for the system's machine-learning models and write rules that control what kind of content will appear in a user's feed. *Id.* ¶¶ 27-28.

*Third*, TikTok employees hand-pick some content for promotion. Stokka Decl. ¶ 23. Those promotion decisions figure into whether the recommendation system will share the promoted video with a particular user based on its predictions about the user's preferences. *Id.* ¶ 25. TikTok also makes editorial decisions about what mix of content to show. Zhou Decl. ¶¶ 19, 25. Even when a person's history shows a taste for one topic, TikTok injects other content. *Id.* ¶¶ 19-21, 25. TikTok presents its selections as a stream of videos; to see the next video, a user swipes up on her screen. Stokka Decl. ¶ 26.

The TikTok experience does not end at the For You feed. Users can also explore other feeds, including the Following, LIVE, and STEM feeds, which likewise reflect TikTok's editorial priorities, including its personalization decisions. Zhou Decl. ¶ 8.

### B. TikTok Protects Teens and Empowers Parents.

TikTok protects teen users and empowers parents to control and understand their teens' online behavior. Stokka Decl. ¶ 3. Users who register as under eighteen have private accounts by default. *Id.* ¶ 13. Users under eighteen also start with a 60-minute daily screen-time setting. *Id.* ¶ 7. Parents can set daily time settings, schedule breaks, filter keywords, and more. *Id.* ¶¶ 4-7, 13.

## II. California's Existing Restrictions on Teens' Social Media Use Include Parental Consent Exceptions.

A.B. 1709 builds on California's prior efforts to restrict platforms' speech with minors. The Protecting Our Kids from Social Media Addiction Act ("S.B. 976"), 2024 Cal. Stat. ch. 321 (codified at Cal. Health & Safety Code §§ 27000-27007), bars platforms from providing an "addictive feed" to any user under eighteen located in California, Cal. Health & Safety Code §§ 27000.5(a), (d), 27001(a). A social-media company may provide an "addictive feed" to a minor in California only if it "has

obtained verifiable parental consent." *Id.* § 27001(a)(2). Though other S.B. 976 requirements have been enjoined, that provision remains enforceable. *See NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1011-12, 1025 (9th Cir. 2025). TikTok maintains that the provision is unconstitutional in its pending appeal. *See TikTok Inc. v. Bonta*, No. 26-5121 (9th Cir.).

## III. A.B. 1709 Now Bans Personalized Feeds and Autoplay for Users Under Sixteen.

With challenges to S.B. 976's personalized-feed provision pending, California decided to impose even harsher restrictions in September 2026. A.B. 1709 bans companies like TikTok from providing any "addictive feature" to "a user who is under 16 years of age." Cal. Bus. & Prof. Code § 22682(a)(1). The Act describes "addictive feature[s]" as "psychologically exploitative features intended to maximize engagement that foreseeably lead to compulsive use," including an "addictive feed," "[a]utoplay," and "[a]ny other feature" the Attorney General designates by regulation. *Id.* § 22682(a). If a company does not provide under-sixteen users a platform lacking such features, it must delete those users' accounts and personal information. *Id.* § 22684(b)(1).

Borrowing S.B. 976's terminology, A.B. 1709 treats as "addictive" any feed in which media "generated or shared by users" is "recommended, selected, or prioritized for display to a user based, in whole or in part, on information provided by the user, or otherwise associated with the user or the user's device." *Id.* § 22682(b). A.B. 1709 also adopts essentially the same narrow exceptions S.B. 976 sets forth. *Compare id.* § 22682(b)(1)-(7), *with* Cal. Health & Safety Code § 27000.5(a)(1)-(7). None exempts TikTok's feeds, which rely on user-associated information to select and order videos. *See* Zhou Decl. ¶¶ 7-8, 11-12, 23-24.

No parental-consent exception exists. A platform may keep an under-sixteen user's account only if that user receives no "addictive feature" at all. Cal. Bus. & Prof. Code § 22683(a)(2). Otherwise, it "shall delete the account of a user under 16 years of

age and any personal information associated with the user of the account." *Id.* § 22684(b)(1). And even if the platform stops serving Californians under sixteen, it must verify the age of *every* user provided with an "addictive feature." *Id.* § 22684(a)(1).

The Attorney General or any "local public prosecutor" may enforce the Act and seek penalties of up to $50,000 "per affected minor for a knowing violation." *Id.* § 22686(a), (b)(1). TikTok offers personalized feeds "as a significant part of" its service, *id.* § 22682(c)(1), and it serves Californians under sixteen. It therefore faces enforcement of the Act beginning January 1, 2027. *See* Cal. Const. art. IV, § 8(c)(1).

## LEGAL STANDARD

A preliminary injunction is appropriate if a party establishes "that it is likely to succeed on the merits, that it is likely to suffer irreparable harm absent preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Diamond Sands Apartments, LLC v. Clark Cnty.*, 164 F.4th 759, 761-62 (9th Cir. 2026). Alternatively, a plaintiff may obtain relief by showing "serious questions going to the merits" and a balance of hardships that tips sharply in its favor, so long as it also shows a likelihood of irreparable injury and an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). TikTok satisfies either standard.

## ARGUMENT

### I. TikTok Is Likely to Succeed on the Merits.

A party seeking preliminary injunctive relief on a First Amendment claim need only carry the "initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech." *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). TikTok easily carries that burden.

Time and again, States have run headlong into the First Amendment when attempting to regulate different forms of expression based on youth-safety concerns. *See*

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 797-98 (2011). A.B. 1709 should meet the same fate.

### A. The Personalized-Feed Ban Violates the First Amendment.

#### *1. TikTok's Personalized Feeds Are Protected by the First Amendment.*

The First Amendment protects a publisher's "exercise of editorial control and judgment," even when the content it publishes was created by others. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). TikTok's "choices about what third-party speech to display and how to display it" therefore are "editorial choices" protected by the First Amendment. *Moody*, 603 U.S. at 716-17. TikTok "create[s] a distinctive expressive offering" when it delivers to each of its users a personalized For You feed that TikTok has curated based on its Community Guidelines, mission, and values, as well as data about individual users' interests. *Id.* at 738. TikTok's STEM and LIVE feeds are personalized compilations of the same kind. Zhou Decl. ¶ 8.[1]

TikTok's personalized feeds reflect the editorial judgments of flesh-and-blood employees about what content is notable and appropriate, deserves a wider audience, and serves TikTok's mission. Essential to TikTok's speech product is TikTok's choice to *personalize* its offerings, and thereby to "include and exclude, organize and prioritize," *Moody*, 603 U.S. at 716, based on users' characteristics and interests. Employees design, test, and revise TikTok's recommendation system. Zhou Decl. ¶¶ 26-28. TikTok's algorithms thus reflect "human beings' inherently expressive choice[s]" with respect to what content to disseminate and how to display it. *Moody*, 603 U.S. at 746 (Barrett, J., concurring).

TikTok's personalized feeds are protected simply because TikTok has decided what media will be "included in or excluded from" those "compilation[s]" and has "organiz[ed] and present[ed] the included items." *Id.* at 731. "[A] narrow, succinctly

---

[1] While A.B. 1709's precise scope is unclear, TikTok has standing to challenge it because TikTok intends "to engage in a course of conduct"—selecting and displaying personalized content to its users—that is at least "arguably proscribed by" the statute. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-62 (2014).

articulable message is not a condition of constitutional protection"; curated compilations are protected even when, as with the "unquestionably shielded painting of Jackson Pollock," no particular message can be isolated from them. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). That is why the district court considering TikTok's S.B. 976 challenge erred as a matter of law when it held that TikTok's personalized feeds are not protected because they do not "seek to convey an expressive message." *Meta Platforms, Inc. v. Bonta*, No. 5:25-cv-09792-EJD, 2026 WL 2260373, at *5 (N.D. Cal. Aug. 5, 2026).

In any event, TikTok communicates specific messages to users through its personalized feeds; it does not simply feed users more of what they have seen. *First,* TikTok employees also hand-select specific content to promote because they judge that content to be valuable. *See* Stokka Decl. ¶¶ 23-25. That content promotion is an endorsement of specific videos as worthy of dissemination.

*Second*, TikTok's personalized feeds convey the message that specific content will be useful, interesting, and appropriate—not harmful—for a particular user. They do not just mirror a user's expressed interests. TikTok "intentionally intersperses videos outside a person's expressed interests" so that users discover perspectives they would never have sought out. Zhou Decl. ¶ 25. And TikTok chooses *not* to show users content TikTok believes could be inappropriate for them given their characteristics—for example, by dispersing repetitive content about breakups in a teenager's feed. *Id.* ¶¶ 18-21, 25.

TikTok's personalized feeds do not lose their First Amendment protection just because TikTok considers its audience, just as a newspaper editor's attention to her readers does not strip protection from her front page. No one would suggest that the New York Times's personalized feed of news stories it thinks a user would find interesting is unprotected. *See The New York Times Adds Listen Mode and More Personalization to News App*, N.Y. Times (June 7, 2024), https://www.nytco.com/press/

the-new-york-times-adds-listen-mode-and-more-personalization-to-news-app. Nor does it matter that TikTok may not "know specifically what" videos will appear in any user's feed, *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 568-69 (9th Cir. 1984), or that user interactions "contribute to the creative process" as TikTok shapes the feeds it delivers, *see Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010). Either way, TikTok's choice about which "third-party speech" to "includ[e] in or exclud[e] from a compilation" and its "organizing and presenting the included items … is expressive activity of its own." *Moody*, 603 U.S. at 731.

### *2. The Act Prohibits TikTok's Speech, Triggering First Amendment Scrutiny.*

The Act totally bans TikTok from delivering to any Californian under-sixteen compilations of media "recommended, selected, or prioritized for display to a user based, in whole or in part, on information provided by the user, or otherwise associated with the user or the user's device." Cal. Bus. & Prof. Code § 22682(b). Because TikTok's For You feed, STEM feed, and LIVE feed recommend, select, or prioritize content for users based at least in part on information about the user, the Act prohibits TikTok from providing those feeds to users under sixteen. *Id.* § 22683. The Act's blanket ban on personalization thus overrides TikTok's "editorial choices" "about what third-party speech to display and how to display it" and is an "effor[t] to alter [TikTok's] edited compilation[s] of third-party expression." *Moody*, 603 U.S. at 716-17.

The Act's ban is a "[c]ontent-based" regulation of speech that is "presumptively unconstitutional" and subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A law is content-based if it "targets speech based on its communicative content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (brackets omitted). If a law's applicability turns on "the topic discussed" or "the idea or message expressed," the law is "obvious[ly]" content-based. *Id.* at 69, 74. A law that turns on the speech's "function or purpose" is a "subtler"—but no less

unconstitutional—form of content-based discrimination, at least when that consideration "achieves the same result" as subject-matter or topic discrimination. *Id.* at 74.

The Act's ban on personalized feeds is content-based under these standards. *First*, whether TikTok violates the Act "depend[s] entirely on the communicative content" of the compilation it delivers. *Reed*, 576 U.S. at 164. The same videos ranked by recency or popularity are permitted; but they are banned if they are ranked by what TikTok knows about the viewer. *See* Cal. Bus. & Prof. Code § 22682(b). *Second*, the ban applies to one category of expressive product—*personalized* feeds—the "function or purpose" of which is to provide collections of content that are tailored to the individual user. *Reed*, 576 U.S. at 163. *Third*, the ban "cannot be justified without reference to the content of the regulated speech," *id.* at 164 (internal quotation marks omitted), as its purpose is to stop minors from seeing certain types of content. *See* A.B. 1709, § 1(a)-(k) (describing alleged harmful effects of social media). "The emotive impact of speech on its audience is not a 'secondary effect'"; regulations justified based on the impact of speech on those who receive it are "content-based." *Boos v. Barry*, 485 U.S. 312, 321 (1988) (plurality opinion).

The Act is also speaker-based. It exempts from the definition of "covered platform" services whose user interactions are "limited to commercial transactions or to consumer reviews" and services that "operat[e] a feed for the primary purpose of cloud storage," Cal. Bus. & Prof. Code § 22682(c)(2)(A)-(B). And the ban reaches only compilations of "media generated or shared by users." *Id.* § 22682(b). So it prohibits personalized feeds of TikTok videos, but not personalized feeds of music created by Spotify or news stories published by The Times. Speaker-based distinctions of this kind "reflec[t] a content preference" and independently trigger strict scrutiny. *Reed*, 576 U.S. at 170.

Finally, even if the Act's ban on personalized feeds were content-neutral, intermediate scrutiny would apply because it is "a restriction on speech or expression"

protected by the First Amendment. *City of Austin*, 596 U.S. at 76; *see* Boutrous Decl., Ex. A at A-20 (Assemb. Comm. on Privacy & Consumer Prot., Bill Analysis, A.B. 1709 (Lowenthal), 2025-2026 Reg. Sess. (Cal. Apr. 16, 2026) (Legislature noting that the bill "would be subject to intermediate scrutiny")).

*3. The Personalized-Feed Ban Fails First Amendment Scrutiny.*

The personalized-feed ban fails any level of heightened scrutiny. Under strict scrutiny, the State must prove that the ban is "narrowly tailored to serve compelling state interests," *Reed*, 576 U.S. at 163, and the ban must be the "least restrictive means to further" the State's interest, *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Under intermediate scrutiny, the State must show that the ban is "narrowly tailored to serve a significant governmental interest," the regulation must not "burden substantially more speech than is necessary," and the State must show that it "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen v. Coakley*, 573 U.S. 464, 486, 494 (2014). The governmental interest must be "unrelated to the suppression of free expression" and the restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Either way, "the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). The State cannot carry that burden.

**State interest.** California doubtless "possesses legitimate power to protect children from harm." *Brown*, 564 U.S. at 794. But California "must specifically identify an actual problem in need of solving." *Id.* at 799 (internal quotation marks omitted). At the very least (under intermediate scrutiny), the State must point to "real, not merely conjectural" harms. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (plurality opinion). It has not done so.

The Legislature identified no evidence that personalized feeds—as distinct from social-media use generally, screen time generally, or particular categories of content—harm minors. The Legislature's findings speak of "social media platforms," "social media use," and "problematic social media and internet use," A.B. 1709, § 1(a), (g), (n); they do not claim that a feed curated to a teenager's interests harms her in a way that a feed of the same videos arranged chronologically does not. In fact, there are no reliable studies or evidence linking personalized feeds to negative impacts on adolescents. Galván Decl. ¶ 38. The Assembly's own analysis acknowledged that causal evidence about social media's effect on adolescent mental health "is difficult to ascertain," and it reported that a three-year study of more than 100,000 adolescents found that "moderate social media use was associated with the best well-being outcomes." Boutrous Decl., Ex. A at A11-A12; *see* Galván Decl. ¶¶ 27, 50-51, 72 (debunking claims that social-media use harms teens). And the Legislature never explained why the parental-consent framework it enacted in S.B. 976—and continues to defend over TikTok's challenges—is inadequate, beyond asserting that "current regulatory frameworks do not adequately address the addictive design of social media platforms." A.B. 1709 § 1(*l*).

The State's actual interest is apparent from the Act's own findings: California believes that depersonalized feeds are less appealing to teenagers and will therefore cause them to spend less time on social media. But making a disfavored medium less appealing to its audience—whether that medium is social media, video games, or comic books—is not a legitimate governmental interest, let alone a compelling one. Moreover, there is no evidence that social-media features themselves, as opposed to particular *content* that teens may view, are harmful. Galván Decl. ¶¶ 90-91. And content—on social media or elsewhere—is protected by the First Amendment even when the State considers it "deeply 'misguided'" or "likely to cause 'anguish' or 'incalculable grief.'" *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023).

**Less restrictive alternatives.** Even if the State could invoke some general interest in minors' wellbeing, the Act does not use the "least restrictive means to further" that interest. *Sable*, 492 U.S. at 126. And (under intermediate scrutiny) "less intrusive tools" are "readily available," *McCullen*, 573 U.S. at 494. In fact, TikTok already provides the tools that the State purports to want: a default sixty-minute daily screen-time setting for users under eighteen; Family Pairing, through which parents may set screen-time limits, filter keywords, enable additional content filtering through the "Restricted Mode" feature, and supervise their teen's experience according to their own judgment of their teen's maturity; muted push notifications overnight for users aged thirteen to fifteen; and age-based content levels that divert mature content from younger users' feeds. *See* Stokka Decl. ¶¶ 3-16, 21.

Those tools do for personalized feeds what the video-game industry's voluntary rating system did in *Brown*—they ensure that "parents who care about the matter" can decide for themselves the kind of experience that their teens have on TikTok's platform. 564 U.S. at 803. As in *Brown*, the State "cannot show that the Act's restrictions meet a substantial need of parents who wish to restrict their [teens'] access" to personalized feeds, "but cannot do so." *Id.* "Filling the remaining modest gap in concerned parents' control can hardly be a compelling state interest." *Id.* Nor is it an answer that some parents may not use the tools available to them; the government "does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Id.* at 803 n.9. The State could also "educat[e] [teens] and parents" about those tools or "incentiviz[e] companies to offer" additional "voluntary" tools to assist parents. *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1121 (9th Cir. 2024). The Act overrides even a parent who has decided that a personalized feed, subject to limits she sets, is right for her child. The ban thus burdens "substantially more speech than is necessary." *McCullen*, 573 U.S. at 486.

**Narrow tailoring.** The Act is also overinclusive (and counterproductive). The Act makes it harder for TikTok to keep harmful content away from teens and to show them beneficial content. TikTok's dispersion rules, which prevent a teenager's feed from filling with one video after another on the same difficult subject, take into account "previous interactions with media generated or shared by others"—which the Act forbids TikTok to consider. Cal. Bus. & Prof. Code § 22682(b)(1); Zhou Decl. ¶¶ 19-21, 34.

Moreover, the Act is overinclusive in barring personalization for *every* teenager under sixteen, *every* interest, and *every* topic, regardless of how much time the teenager spends on the platform, what her parents want, or whether she has encountered any potentially harmful content. For example, it reaches TikTok's STEM feed—a feed the user affirmatively selects, confined to science, technology, engineering, and mathematics, and organized by relevance to the user. That feed bears scant resemblance to the "addictive" feeds the Legislature appears to target; the Act sweeps it in only because it is prioritized "based, in whole or in part, on information … associated with the user." *Id.* § 22682(b). The Act thus prohibits personalized feeds that are beneficial for teens in helping them establish shared interests with peers and learn new information and skills. Galván Decl. ¶¶ 92-94.

The Act's failure to account for parental choice also makes it more overinclusive than the law invalidated in *Brown*. California's video-game law in *Brown* at least left the restricted games available to a minor whenever "one parent (or even an aunt or uncle) says it's OK." 564 U.S. at 802. The Supreme Court nonetheless held that the law was "vastly overinclusive" as an aid to parental authority because "[n]ot all of the children who are forbidden to purchase violent video games on their own have parents who *care* whether they purchase violent video games," and the law's "entire effect [was] only in support of what the State thinks parents *ought* to want." *Id.* at 804. A.B. 1709 does not merely fail to track what parents want—instead, it *overrides* parents who have affirmatively decided that a personalized feed is appropriate for their child. "This is not

the narrow tailoring to 'assisting parents' that restriction of First Amendment rights requires." *Id.*

The Act is also extremely underinclusive, which "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 802. The Act exempts services whose user interactions are limited to commercial transactions or consumer reviews, which appears to mean that an under-sixteen user may receive a personalized feed of product reviews and commercial advertisements, but not a personalized feed of science videos. Cal. Bus. & Prof. Code § 22682(c)(2)(A). The Act reaches only social-media platforms that offer "an addictive feature as a significant part of the service," leaving all other "addictive features" that are not a "significant part" of the service unregulated. *Id.* § 22682(c)(1). And the Act defines an "addictive feed" to reach only "media generated or shared by users," *id.* § 22682(b), leaving untouched any "addictive feeds" consisting entirely of media generated by a platform itself or by third-party professional content producers. Just as California in *Brown* "singled out the purveyors of video games for disfavored treatment—at least when compared to booksellers, cartoonists, and movie producers—[without any] persuasive reason," 564 U.S. at 802, A.B. 1709 singles out only some content and some platforms for disfavored treatment. Leaving the same features available to the same teens from favored speakers "is not how one addresses a serious social problem." *Id.*

As in *Brown*, "the overbreadth in achieving one goal"—here, curbing social-media use—"is not cured by the underbreadth in achieving the other"—here, the law's focus on only some content and some platforms. *Id.* at 805. Because the ban fails any level of heightened scrutiny, TikTok is likely to succeed in showing that it violates TikTok's First Amendment rights.

*4. The Personalized-Feed Ban Also Violates the Rights of TikTok's Users.*

The ban also violates the rights of TikTok's users.[2] The First Amendment protects "the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). And minors "are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212-13 (1975) (citations omitted).

Social-media platforms are among "the most important places … for the exchange of views." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). The ability of TikTok and its teen users to engage in such expression depends on how TikTok displays the billions of videos posted to its platform each year. Zhou Decl. ¶¶ 5, 23, 33. A chronological feed would privilege volume over relevance, for example, and a popularity-based feed would favor well-known creators and widely held viewpoints. TikTok thus cannot create—and teens cannot access—a creative, collaborative, and positive digital environment if teens are forced to sift through billions of videos on their own. *Id.* But the Act prevents teens from receiving personalized content—*even content that they want to receive, or which their parents want them to receive.* The Act therefore resembles the law the Supreme Court condemned in *Reno*, under which "neither the parents' consent—nor even their participation—in the communication would avoid the application of the statute." *Reno*, 521 U.S. at 865.

**B. The Deletion Mandate Violates the First Amendment.**

A.B. 1709 forces TikTok to either (1) surrender its First Amendment right to personalize content for under-sixteen users or (2) "delete the account of a user under 16 years of age and any personal information associated with the user of the account." Cal.

[2] TikTok asserts these rights on behalf of its users, whose ability to receive TikTok's speech is inextricably bound up with TikTok's ability to deliver it. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988) (allowing booksellers to "alleg[e] an infringement of the First Amendment rights of bookbuyers").

Bus. & Prof. Code § 22684(b)(1). Although that provision purports to give TikTok meaningful options, "[i]n reality, [TikTok] is given no choice, except a choice between the rock and the whirlpool." *Frost*, 271 U.S. at 593. Because both options require TikTok to surrender its First Amendment rights as the price of avoiding an unconstitutional penalty, the Act's "deletion" provision is unconstitutional.

Although California is not directly compelling TikTok to delete anything, California "cannot do indirectly what [it] is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). The State could not *directly* compel TikTok to abandon its curation and design choices for under-sixteen users, or to delete those users' accounts and information without satisfying First Amendment scrutiny. It cannot do so *indirectly* by forcing the platforms to pick which right to surrender.

To begin, the requirement to delete under-sixteen users' personal information triggers First Amendment scrutiny by making it significantly more difficult—if not impossible—for TikTok to provide the personalized expressive product that it otherwise would. *See* Zhou Decl. ¶¶ 11-12, 18, 23-24, 33-35. "Laws enacted to control or suppress speech may operate at different points in the speech process." *Project Veritas v. Schmidt*, 125 F.4th 929, 943 (9th Cir. 2025) (en banc). Just as a law taxing paper and ink burdens a newspaper's First Amendment rights, *cf. Minneapolis Star & Tribune Co. v. Minn. Comm'r of Rev.*, 460 U.S. 575, 591-92 (1983), requiring TikTok to delete under-sixteen users' personal information burdens "the creation and dissemination of information … within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

Deleting under-sixteen users' accounts fares no better. Preventing minors from spending time online is not one of the "relatively narrow and well-defined circumstances" in which government may restrict their access to speech, *Erznoznik*, 422 U.S. at 212-13. To the contrary, there is no "precedent for state control, uninvited by the parents, over a child's speech." *Brown*, 564 U.S. at 795 n.3. Laws requiring minors'

accounts to be deleted prevent those minors from speaking themselves or receiving speech. Such speech-restrictive laws are reviewed for "strict scrutiny." *Id.* at 799.

The deletion mandate also infringes upon TikTok's and its users' freedom of expressive association. As the party prohibited from disseminating speech to minors, TikTok may challenge A.B. 1709 based on the law's intrusion on TikTok's own right to speak to minors as well as TikTok's users' rights to receive speech from TikTok. *See, e.g.*, *Brown*, 564 U.S. at 789-90, 792-95 (in First Amendment challenge by video-game producers, finding dispositive that minors had First Amendment right to receive the speech in question).

Users who join TikTok "associate" with it "for the purpose of engaging in" protected speech, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), and TikTok in turn speaks to them through "personalized" feeds, *Moody*, 603 U.S. at 734. The deletion mandate imposes a "substantial restraint upon the exercise by [TikTok and its users] of their right to freedom of association." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). It is thus subject to strict scrutiny. *See id.* at 460-61.

Section 22684(b)(1) imposes content-based restrictions that trigger and fail strict scrutiny. Even if facially neutral, it "cannot be justified without reference to the content of the regulated speech." *Reed*, 576 U.S. at 164 (internal quotation marks omitted). Indeed, the State's justification for § 22684(b)(1) is to prevent TikTok and other platforms from selecting and displaying content that users are likely to find interesting and engage with.

The State cannot prove that it has a compelling interest in forcing TikTok to delete minors' accounts and personal information. And less restrictive means—like the parental tools TikTok already offers—could accomplish the State's goals. *See* Stokka Decl. ¶¶ 3-16. For the same reasons, the deletion mandate would fail intermediate scrutiny. TikTok is therefore likely to succeed in showing that § 22684(b)(1) violates the First Amendment as applied to TikTok.

### C. Section 230 Preempts the Personalized-Feed Ban and the Deletion Mandate.

Under 47 U.S.C. § 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." That command binds the States: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). TikTok is a provider of an interactive computer service, *id.* § 230(f)(2), and the videos its users upload constitute information provided by other information-content providers, *id.* § 230(f)(3). Because A.B. 1709 treats TikTok as a publisher by imposing liability on TikTok for its exercise of numerous publishing functions, § 230 preempts it.

"Publication" for purposes of § 230 "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). In short, § 230 "precludes liability" when "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024).

As relevant here, recommending, arranging, and displaying third-party content is the function of a "publisher." The Ninth Circuit has held that a platform's "recommend[ation]" features are "tools meant to facilitate the communication and content of others"—so liability premised on such features treats the platform as a "publisher." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019). And the Ninth Circuit this year held that "matching users with content *is publishing conduct*, even when the user has not requested the content," and that "engagement-driven" recommendation algorithms are "the work of publishers." *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159, 1167-69 (9th Cir. 2026) (emphasis added).

The Act imposes liability on TikTok for exactly this sort of publishing conduct. It defines an "addictive feed" as one in which "multiple pieces of media generated or shared by users are … *recommended, selected, or prioritized for display* to a user." Cal. Bus. & Prof. Code § 22682(b) (emphasis added). Liability under the Act therefore turns entirely on which third-party videos TikTok displays, to whom, and in what order. The duty the Act imposes thus "derives from" TikTok's "conduct as a publisher," *Calise*, 103 F.4th at 740 (internal quotation marks omitted); it can be satisfied only by changing which third-party content TikTok publishes to whom. Because liability under the Act "turns on [TikTok's] … conduct of publishing," *Doe 1*, 174 F.4th at 1167, the Act "treat[s] the defendant as the publisher … of content provided by another" in violation of § 230, *Barnes*, 570 F.3d at 1102 (internal quotation marks omitted).

The Act's deletion mandate, § 22684(b)(1), is similarly preempted. It commands TikTok to "withdraw from publication third-party content"—a paradigmatic publishing decision. *Barnes*, 570 F.3d at 1102. The Act's only alternative, §§ 22683(a)(2), 22684(b)(2), requires TikTok to abandon its exercise of a different publishing function—the selection and arrangement of third-party content for those users based on their information.

Finally, the Act contradicts Congress's declared policy "to remove disincentives for the development and utilization of blocking and filtering technologies *that empower parents* to restrict their children's access to objectionable or inappropriate online material." 47 U.S.C. § 230(b)(4) (emphasis added). Congress chose to protect minors by empowering parents, not by authorizing States to dictate what platforms may publish to them.

## II. TikTok Faces Imminent and Irreparable Harm Absent Injunctive Relief.

Because TikTok is likely to succeed on the merits of its First Amendment challenge, it "follows inexorably" that it has established irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). "[T]he loss of First Amendment freedoms,

for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (citation omitted).

The harm here is also concrete and imminent. On January 1, 2027, TikTok must either strip personalization from the experience of every Californian user under sixteen or delete those users' accounts. Cal. Bus. & Prof. Code § 22684(b)(1). Deleted speech is lost for good. *See* Zhou Decl. ¶¶ 34-35. And with penalties of up to $50,000 "per affected minor," *id.* § 22686(b)(1), TikTok has no realistic option to defy the Act while this case proceeds.

**III. The Balance of Equities and Public Interest Weigh in TikTok's Favor.**

Similarly, because TikTok is likely to succeed on the merits of its First Amendment claim, the final two factors—the balance of equities and the public interest—merge because the government is the opposing party, and also weigh in TikTok's favor. *See Baird*, 81 F.4th at 1044 (a "plaintiff who can show that a statute likely violates the Constitution will also usually show that both the public interest and the balance of the equities favor a preliminary injunction" (internal quotation marks omitted)). It "is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms*, 32 F.4th at 731. And the fact that TikTok has "raised 'serious First Amendment questions compels a finding that … the balance of hardships tips sharply in [TikTok's] favor.'" *Cmty. House*, 490 F.3d at 1059.

**IV. The Court Should Waive the Bond Requirement.**

Rule 65(c) gives the Court "discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis omitted). The Court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Enjoining enforcement of a likely unconstitutional statute against a single plaintiff causes the State no compensable harm. The Court should thus require no bond.

## CONCLUSION

For the foregoing reasons, the Court should grant TikTok's motion and preliminarily enjoin Defendant, and all persons described in Federal Rule of Civil Procedure 65(d)(2), from enforcing Cal. Bus. & Prof. Code §§ 22683, 22684(b)(1), and 22686 against TikTok with respect to personalized feeds without requiring a bond.

Dated: November 6, 2026

Respectfully submitted,

By: */s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.
**Gibson, Dunn & Crutcher LLP**
Theodore J. Boutrous Jr.
Nicola T. Hanna
Poonam G. Kumar
Blaine H. Evanson
Miguel A. Estrada

*Attorneys for Plaintiffs TikTok Inc. and TikTok USDS Joint Venture LLC*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs TikTok Inc. and TikTok USDS Joint Venture, certifies that this brief contains 6,980 words, which complies with the word limit requirements of L.R. 11-6.1.

Dated: November 6, 2026

By: */s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.
**Gibson, Dunn & Crutcher LLP**
Theodore J. Boutrous Jr.
Nicola T. Hanna
Poonam G. Kumar
Blaine H. Evanson
Miguel A. Estrada

*Attorneys for Plaintiffs TikTok Inc. and TikTok USDS Joint Venture LLC*